# IN THE COURT OF APPEALS OF IOWA

No. 23-0536
Filed May 24, 2023

**IN THE INTEREST OF M.D.,**
**Minor Child,**

**V.W., Mother,**
Appellant.
_____

Appeal from the Iowa District Court for Scott County, Cheryl Traum, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Barbara E. Maness of Kimball-Stevenson House, Davenport, for appellant mother.

Brenna Bird, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Jean Capdevila, Davenport, attorney and guardian ad litem for minor child.

Considered by Schumacher, P.J., and Chicchelly and Buller, JJ.

**BULLER, Judge.**

The juvenile court terminated the mother's parental rights to this child (born in 2022) on six separate statutory grounds, and the mother appeals. Finding clear and convincing evidence of at least one statutory ground, we affirm the termination.

As the juvenile court noted, this family has a lengthy history with the trial courts and the Iowa Department of Health and Human Services (HHS), pre-dating the birth of the child at issue in this appeal. Child-in-need-of-assistance (CINA) cases and termination proceedings relating to other children were litigated from 2018 to 2021, prompted at first by concerns related to the mother's medical abuse or neglect of her children.

Our court also previously decided cases related to this mother and her older children. In 2020, a panel of our court reversed termination of the mother's parental rights, finding the State failed to prove either that the children could not be returned to the mother's custody or that the basis for the CINA adjudication persisted. *In re T.W.*, No. 20-1161, 2020 WL 7022390, at *3–4 (Iowa Ct. App. Nov. 30, 2020). The core of the factual allegation in that case was that the mother provided false and exaggerated information about one or both of her children, perpetrating what was once known as Munchausen Syndrome by Proxy and is now referred to as factitious disorder imposed on another. *Id.* at *2. In other words, the mother was inventing or exaggerating medical conditions and subjecting the children to unnecessary tests and treatment.

Tragically, two months after our court's panel decision in *T.W.*, one of the children was fatally injured by the mother's paramour, who is the father of the child at issue in this appeal. The facts of that abuse are recounted fully in a February

2023 decision of our court, which affirmed the termination of parental rights for one of the mother's surviving children. *See In re B.W.*, No. 23-0002, 2023 WL 2148767, at *1 (Iowa Ct. App., Feb. 22, 2023). Suffice to say, the paramour (through either neglect or overt abuse) inflicted numerous serious injuries on the male child, including broken bones, burns to his mouth and nose, injuries to his anus and genitalia, and fractures to his skull. *Id.* The paramour was convicted of neglect of a dependent person resulting in death by an Indiana court, and he was sentenced to thirty-two years in prison. *Id.* We affirmed termination of the mother's rights to B.W. for four reasons: because the mother was dishonest with her therapist regarding the child's death, because she remained "oblivious" to risks posed to her children given her poor protective capacities, because her tendency to expose children to unnecessary medical interventions persisted, and because she "struggled to form a bond" with the child. *See id.*

The record developed in this termination proceeding convinced the juvenile court that these same concerns had not abated and warranted termination of the mother's rights to this child under Iowa Code section 232.116(1), paragraphs (d), (e), (g), (h), (i), and (n) (2022). On our de novo review, we may affirm if any one of these grounds was proven by clear and convincing evidence. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We dispose of the appeal by applying paragraph (h), for which the mother contests a single element: whether the child could be returned to her custody "at the present time." Iowa Code § 232.116(1)(h)(4); *see In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014) (recognizing "at the present time" means at the time of the termination hearing).

In reviewing this record, we credit and are persuaded by the credibility findings and observations of the juvenile court. *See A.M.*, 843 N.W.2d at 110. The court found that, based on its observations of the mother "in each court hearing," the mother showed little empathy for the children and only expressed emotion "during testimony about [the paramour's] prison sentence" and when things otherwise "affected her, not her children." The court also noted that, even as of the termination hearing, the mother had not fully accepted that her paramour killed her older child or that her decision to allow him to care for the child played a role in the death.

The juvenile court's observations of the mother's cold indifference are supported by the record evidence. For example, while the mother claimed that she dropped to the ground upon news of her child's fatal injuries, the social workers in Indiana reported that the mother spent much of her time at the hospital on her cell phone and showed very little emotion. At the termination trial, when discussing her older child's fatal injuries, she described taking the child off life support as "pulling the plug," rather than the emotional experience of a parent deciding end-of-life treatment.

In the months leading up to termination, the mother repeatedly demonstrated she still lacks basic parenting skills. She required prompting to tend to her crying child, and she demonstrated no meaningful bond with the child. She refused to cooperate with HHS's requests for the identity of her multiple paramours or associates (including the identity of the father she recently conceived with), which has prevented background checks necessary to ensure the child is not exposed to dangerous individuals. Even after one year of therapy, the mother

failed to disclose the facts surrounding the death of B.W. to her therapist, which highlights her failure to recognize that her parenting choices can have fatal consequences for the children in her care. At the time of termination, she had discontinued counseling and essentially all other services. Finally, the mother remains deceitful and dishonest, as evidenced by her lying about whether her child had vomited, pricking her child's finger for blood when the provider was briefly distracted, and continuing to debate the merits of her factitious-disorder diagnosis rather than work to improve her parenting skills.

In sum, we agree with the HHS worker's testimony, well-grounded in her work with this family, that the mother's "ability to protect her children . . . has not improved through this service case. It has gotten worse, actually." In light of the evidence discussed in this opinion and the deference we owe to the juvenile court's credibility determinations, we fully adopt the juvenile court's finding that the child "still cannot be left with the mother outside of close and constant supervision." This finding defeats the mother's challenge on appeal and ends our analysis. The State met its burden under section 232.116(1)(h), and we affirm the termination of parental rights, consistent with our recent decision in *B.W.*, 2023 WL 2148767, at *2–3 (applying section 232.116(1)(f)—the analogous provision for older children).

**AFFIRMED.**